Third case of the morning is 21-8058, Frank v. Wyoming Secretary of State. Counsel for the appellant, would you make your appearance and proceed, please? Okay, please court, counsel, my name is Jim Peters and I represent the Wyoming Secretary of State and the Laramie County District Attorney in this matter, joined at counsel table by Mackenzie Williams and also Catherine Young, who represents the Laramie County Clerk. This case involves a delicate balancing of two fundamental rights. The right to engage in political discourse and the right to vote freely, a right in which the Supreme Court has said, no right is more precious. And in balancing those two rights, states have determined it's appropriate to restrict electioneering near polling places, specifically to protect voters from intimidation, harassment and confusion, and also to preserve election integrity. And it's this backdrop in which we look at Wyoming Statute 22-26-113, and we contend that the district court misapplied the controlling law in this case, which is the person pluralities decision when it required the defendants to present specific evidence demonstrating why Wyoming Statute prohibited electioneering on election day. Well, the state does have some burden, doesn't it, under the Burson opinion? Your Honor, the modified burden articulated by the Burson plurality is that the regulation must be reasonable and not significantly impinge on First Amendment rights. But that's not an evidentiary burden. But that suggests that you satisfy your burden by pointing to the existence of a statute. Your Honor, there's still a test that must be met, and that's what the Burson plurality cited. The Burson looked at the long history of election reform and held that we can't require states to point to empirical evidence demonstrating the statute is the least restrictive means necessary. Well, counsel, let me ask you this. Let's take one of the buffer zones, the hundred foot, not the hundred yard for general election days, but the hundred foot. I take it that applies to absentee voting and early voting. Correct, Your Honor.  Yes, Your Honor. All right. So we have from Burson there that they found widespread and time-tested consensus. But there it was a general election day voting buffer. Why did Wyoming create a buffer for absentee and early voting? And where is the widespread and time-tested consensus for that? Your Honor, the widespread and time-tested consensus is that common sense that voters are entitled to certain protections, not to be subject to harassment, undue influence, or confusion. Well, no, wait a minute. The Burson court went through an historical analysis. It wasn't just common sense. It was that there were buffers over a lengthy period of time. But here we have a different kind of election, a different kind of buffer. And have you, did the Wyoming legislature point to any history? Have you pointed to any history? Is there any problem that has occurred with absentee voting without a buffer? I mean, we're back to Judge Rossman's question, which is, it seems like your argument is, if the Wyoming legislature wants the buffer, it must be okay. Your Honor, there's no legislative findings when the legislature expanded the buffer zone to apply to absentee polling places. But the same governmental interests apply, whether it's voting that's occurring. I get the interest, but there's a burden. It says that the court used burden. It suggests you need to show something. Even if it's not evidence, it has to be history. And where have you provided either? You don't want to provide evidence because there is no evidence, is there? And you don't have history. So how can we uphold this just on the basis that the legislature adopted it? Don't you have to give us something to work with? Your Honor, buffer zones have been in place protecting elections in Wyoming since the late 1800s. Have they had one for absentee voting and early voting since the 1800s? Absentee voting was added to the statute in 2006, Your Honor. And at that time, the distance that was protecting the absentee polling place was 300 feet. But in 2018, the legislature... You said 1800s. That's a far cry from 2006. Correct, Your Honor. Just, if you had to say in just a few words, why have you satisfied the modified burden in Burson for the 100-foot buffer, what's your answer? Your Honor, the distance is exactly the same. All of the same history that was looked at by the Burson plurality supports the buffer zone. I didn't see one reference in the Burson plurality to absentee or early voting. Your Honor, you are absolutely correct. There is no reference to absentee or early voting in the Burson plurality decision. But that same principle has to apply to protect voters who are exercising their right to vote on absentee days. How is the exercise of voting happening on absentee days? And is it dropping off the ballot? Your Honor, there are actually voting booths and actual early voting, if you will, does in places in Wyoming. So the same kind of the act of voting is the same or could be the same in the absentee context as it is on election day? Correct, Your Honor. Individuals can also request traditional mail-in absentee ballots, but these voting centers also allow in-person voting, just as is conducted on election day. And let me just be clear, I understand one point. Was it the case that the 300-foot rule, that applied to all voting initially, right? Until 2006. And so was there absentee, once there was absentee voting, did the 300-foot rule ever apply to that too? Yes, Your Honor. From 2006 to 2016, 300-foot rule. Okay. And so this was essentially a limiting of the scope as it relates to absentee ballot. Absolutely, Your Honor. In 2018, the legislature undertook a rebalancing and determined that less voters vote in person on absentee days. And we can infer that from the record. The record shows the 2018 general voting statistics. And that's in the appendix on page 165 through 191. And comparing the number of individuals that vote in person on absentee days to the number of individuals that vote in person on election days, it's less than 12% of the total voters who vote on absentee days. Less than 12%. Is there anything in the record that speaks to whether voters vote absentee in Wyoming more than they do in other states? Your Honor, there's nothing in the record. And there are no additional legislative findings on that. Okay. But what we can do is infer from the record that those statistics that the legislature, it's reasonable to infer that the same number of people do not congregate on an absentee day as they do on an election day. And so the legislature, again, while no specific legislative findings, it's reasonable to infer that they determined that a larger buffer zone is appropriate on election day compared to absentee days. So you're talking about geographic scope. What about temporal scope? Can you speak to how we should understand Burson, applying Burson to the absentee buffer? Your Honor, absentee voting in Wyoming is open for 45 days prior to the election. And there is nothing in Burson or any other decision that I've been able to find that distinguishes the number of days that absentee or early voting is available. One case that's cited in our brief that didn't strictly undergo this analysis, but it's another case out of the District of Kansas, is Clark v. Schmidt. And in that case, the same statute, the same buffer zone applied to early voting. And in that case, it was 20 days early voting. Now, the district court didn't undertake a separate analysis to determine whether that was appropriate or not. But I would submit that accepting that absentee polling places are not entitled to a buffer zone, that would have widespread consequences on any early voting or on any state. Well, is anybody really suggesting that? I think it's really more a matter of whether the state has met the modified burden under a particular sized buffer zone. I don't know that the plaintiffs here are saying that there should be no buffer zone at all. But, Your Honor, the zone for absentee days in Wyoming is 100 feet. That's exactly the distance that was proved. That wasn't my question. I mean, you were suggesting that it's either 100 feet or nothing. But what the issue is here, can you justify the 100 feet? Your Honor, we would submit that the same historical evidence justifies 100 feet on absentee days as it would on an election day. And that there's no reason that the voters who are exercising their right to vote in person on absentee day or on early voting days are not entitled to those same protections that they were, as they would be on an election day. Can I just ask you, see if you can help with this. So in person, on the one hand, the court talks about strict scrutiny. And then we get to the tailoring part of the strict scrutiny test, and we end up with this modified burden, reasonable, significantly impinged. Did the court abandon strict scrutiny? It seems like your argument is more aligned with a rational basis test. Your Honor, the first portion of the strict scrutiny test still applies where the state has to present evidence of a compelling state interest. The modified burden comes in exactly as you mentioned, to the tailoring component. And that modified burden is that the test must be reasonable and not significantly impinged on First Amendment rights. And the sole reason that the court did that is because electioneering near polling places has the potential to threaten, to interfere with the act of voting itself. And as the Supreme Court in Monroe stated prior to Burson, if we required specific evidence demonstrating the least restrictive means or that the zone was precisely tailored to combat those harms, it would result in endless battles on whether there was sufficient evidence presented by the states to justify that specific discipline. You know, you spent most of your time talking about the reasonableness part of the modified burden and not the significantly impinged. But again, I'm curious about your take on the standard. How does the statement show no significant impingement by the buffer? Your Honor, as noted by the Burson part, there's not an evidentiary burden. So what we have to do is we look at the total volume of speech. I'm asking you about the burden is on the state to show no significant impingement. How does the state do that? In a way, it's a little bit like proving a negative. Your Honor, looking at the narrow area only in the immediate context of the polling place. That's how we prove there's not a significant impingement. Yeah, but have you done that? Your Honor, individuals are able to electioneer in anywhere outside of the zones on those particular days. I'm just asking, is there anything that you pointed to or put in the record where you've addressed that burden? Your Honor, there's not an evidentiary finding in the record, if you will. But there's no reason to depart from the analysis that the Burson Plurality did. So are you contending that what you have to do and what you did under Burson is point to the geographic scope of your buffer, compare it to the one approved in Burson, and if it Your Honor, the Burson Plurality did provide us some additional guidance. And that guidance comes in by way of the statement that at some point, it didn't draw a specific line, didn't say 100 feet is the bright line rule. But it said at some point, restricting electioneering near polling places will become an unpermissible restriction akin to the statute struck down in Mills. Mills versus Alabama. That statute and that court dealt with an absolute prohibition on speech. The court also cited a Meyer versus Grant. And again, that statute was an absolute prohibition. Is the temporal scope of the buffer, temporal scope of the restriction in the absentee polling context, part of the narrow tailoring analysis? That part of the subject that the narrow tailoring focus on, not just geography, but temporal scope? Absolutely, Your Honor. I believe that the temporal scope and as well as the actual distance, those are part of the analysis to determine whether the regulation itself is reasonable and does not significantly impinge on speech. Because to speak to that point, and Mills, if absentee balloting took place in Wyoming every day of the year, that would give us reason to have a different, a different take at evaluating whether it's reasonable and it's impingement on speech, right? I'm not asking you that it would lose. I'm saying, but it would be a relevant factor to consider. Absolutely, Your Honor. That could be more akin to the absolute prohibition that was noted in Mills. I see my time is up. Can I just ask one other question? I noticed in Burson, this was in the dissent, Justice Stevens was saying that the Tennessee statute there didn't apply to political debate or solicitation concerning issues or candidates not on the day's ballot. Now, assuming that's accurate, maybe you don't think it is, but does the Wyoming statute not apply to non-ballot campaigning in the buffer? In other words, somebody's holding up a sign that is relevant to what's on the ballot that day. The statute appears to cover that. But what if they're holding up a sign that has nothing to do with what's on the ballot that day? Does the statute cover that? Yes, Your Honor. Signature gathering is a great example of that. Oftentimes, circulators are attempting to see signatures for petitions that are not on the ballot on that day. All right. And does that make this case different from Burson, then? That would make, if Justice Stevens is correct, then the scope of the Wyoming statute would be much greater in restricting speech than the Tennessee statute in Burson. Your Honor, I think that there may be a difference in the scope of all the activities prohibited under the statute, but we would submit that the same analysis and the same test applies. And applying that test, the Wyoming statute should be upheld. Thank you. May it please the Court, my name is Stephen Klein on behalf of John C. Frank and Grass Fire, LLC. The court below correctly ruled that two facets of Wyoming statutes 2226.113 are unconstitutional. The 100-yard election day buffer zone, as well as the statute's prohibition on certain bumper stickers within either the absentee or the election day zone. This court should affirm those rulings and the court should go farther. It seems the easiest way to do this is to also strike the 100-foot absentee buffer zone. To the points made by Mr. Peters, it's interesting we speak, you know, and we look also at Minnesota Voters Alliance v. Manske. There's still an understanding that the election day buffer, the election day polling place is a very special and unique place. And the overlays of the election day buffer zones in Laramie County accurately reflect that, be it the Story Gym downtown, be it the Laramie County Community College. Setting aside a building for this one actual event, which sort of justifies a way why we have an election day buffer zone that should be limited to 100 feet. But then we go to the absentee zone, a courthouse under the statute, and moreover, and as a matter of fact, the statute in Laramie, the courthouse in Laramie County, as well as where the county clerk has her office, where people register to vote. They might not be voting that day. There are many people who go to the Laramie County Government Complex 45 days before an election who are not voting at all and cannot be solicited. Well, isn't that true of election day as well? The Laramie Government Center is open for business on election day, so there are people coming and going doing things other than voting on election day. So I'm not sure I understand how there's any difference in that regard. Judge Matheson, the Laramie County Government Complex is not an election day polling place. It only houses the absentee voting 45 days prior to a general or a primary. So respectfully, that's incorrect and the record reflects that. So there's no voting there on general election day? Correct. Okay, thank you. And that's what's so important for an organization, particularly like Grass Fire, that in order to qualify for a ballot or qualify an issue, you have to have signatures of registered voters. So your contention is that the state has a less compelling interest in the absentee context, right? Yes, Your Honor. Did you make that argument in the district court? Yes, we did, Your Honor. We developed a robust record, I think, right in the complaint, challenging the signature-gathering provision or as applied to Grass Fire, which is what they do. And then moreover, illustrating this, just the substantial harm, because that's where they can go, you know, is to public buildings, is to places, you know, that again, when you put everything in one place, I would point again, the courthouse provided by statute is one of the options for this. And that flies in the face of United States v. Grace, which was reflected by this court in Verlo 1, that the sidewalks and streets surrounding a public building like a courthouse are traditional public fora. What I don't understand is, at least it was my understanding in person and in related cases, that what we're protecting is the physical act of voting. And if that's the case, why should that be diminished? Just because it's absentee voting, just because you're surrounded in a public building, so what? You're still trying to protect the integrity of that physical act of voting from impingement, coercion, or anything of the sort. So why is it any different? Your Honor, it must still be a reasonable regulation. I think to that point, you look at Minnesota Voters Alliance v. Manske, a more recent decision, that even within the polling place, reasonableness hinges on, okay, you can't electioneer within the polling place. That's a given. That's not a part of this case. But if you look to someone wearing a T-shirt that says the Second Amendment, we know from Manske that can't, writes it out, or even the First Amendment, that is political speech, but it's unreasonable to regulate that even within a polling place. So we look at, again, interfering or confusing electors, and this idea that you're gathering signatures for, and again, by Wyoming law, these are not, these have nothing to do with the election that's occurring that day. Rather, you're gathering signatures to get an issue that might be on the ballot in the next election, right? And those have to be gathered from registered voters in either case. Okay, and then, so on the point of reasonableness, just to make sure I understand, is that the idea that because this Laramie Center is used, it is for, it is used for other things. There are other things that are going to be going on. They're going to be going on at the same time Absentee Balloting is going on. That, the conglomeration of events that will be taking place at the time that this physical act of voting takes place underscores the reasonableness of allowing this one additional act to take place. It underscores the unreasonableness of prohibiting signature gathering there because so much else is going on, so much, we need to leave more room for robust political engagement, whether it's a county commission meeting going on in the building that day, whether it's a, whether it's someone in court, whether it's someone just, again, getting a marriage license. Yes, but these things don't, these things don't have a direct nexus to the physical act of voting that's taking place. The fact that there's a hubbub of activity of unrelated sorts doesn't mean that that activity has any nexus at all to the thing that we're protecting, and that's the point. Agreed, Your Honor. But you're not arguing that there can be no buffer zone for absentee or early voting, are you? No, Your Honor, but I would look, and I think particularly looking at the fallout of Verlo, I think which did mostly develop in the district court relating to the, just a few blocks away from here, the public area between two buildings at the Denver Courthouse Complex, and the Laramie County Government Complex has sort of a small alcove as well between the atrium and the sidewalk, right? But doing a 100-foot buffer impinges on the sidewalk. Again, the traditional public fora on all sides of the building, not even just that one entrance to the atrium where one would engage in early voting. Well, I understand your argument, but we are still dealing with a reasonableness standard, which isn't a particularly onerous standard under the narrow tailoring. So why isn't 100 feet reasonable? Judge Matheson, to that point, I want to take one step back to Mr. Peters' point, and I think your discussion of Burson, I think it's very important, very important here to understand where I agree with the entire approach. Content-based restriction, okay, we move into narrow tailoring, and within that tailoring analysis, we have the modified burden of proof. But that modified burden of proof had a little step before it that said, we have these historic voting laws that relate to election day buffer zones, and those came along at the same time as the Australian ballot, or even the voting booth itself within a polling place. And because of that, we can't unnecessarily, we don't want to unbundle these historic reforms because we don't know necessarily what worked and what didn't. The absentee buffer zone, and again, even bumper stickers and signature gatherings, things that we've challenged individually, those have no basis in history. Those are, again, and I think some of your questioning to Mr. Peters did flesh this out, and owing to that, you can't hide in history. The modified burden of proof, if you utilize it, you still have to put up something to show why we're going beyond the historic basis. But the 300 foot, if I understood correctly, the 300 foot buffer zone applied to absentee balloting, too, for a period of time. So when you talk about whether something is reasonable, the government took the step of paring back what would have otherwise been a 300 foot buffer zone. Why doesn't that in itself bespeak reasonableness? Because they could have hid, conceivably, under the 300 foot buffer zone in history to continue to do that. But they didn't do that. So, I mean, why isn't this a more act of reasonableness than the other? Judge Holmes, because it's not just a matter of distance. It really involves the temporal aspect of the 100 foot zone, the 90 days during an election year. It involves, again, the activity that's going on, be it signature gathering, be it even just gathering a signature for any petition. It doesn't have to necessarily be something to be put on the ballot. So that would be my point there. And I think the panel already sort of acknowledged that. And for that reason, because this is so removed, because this is so new, I do think it's appropriate for this court to consider beyond the election day zone for anything else. We're going to apply strict scrutiny. These are content-based restrictions around it. You could do even traditional public fora analysis because it's a content-based restriction on these kinds of courthouse buffers. Do you think that there's a historical reasonableness basis for the 100 yard buffer? No, Your Honor. There's nothing. Opposing counsel, that's, again, on their burden to find a buffer zone beyond. And we point out again, in antiquity, in the progressive era, the biggest one that Tennessee was able to, according to the Supreme Court, was able to use as a guidepost was the 100 foot New York zone. There's nothing beyond. And I should add, again, election day zone. So Wyoming's used the 100 yard buffer for general election for how long? 1973, I believe, Your Honor, mid-1970s. It was 20 yards before that. Yeah, 60 feet. That's almost 50 years. Yes, Your Honor. But I would add that it was unreasonable then, too. I think that having been reaffirmed, and I should add these different speech restrictions added in the 1980s, then adding the absentee polling place in 2006, and its last go around adding bumper stickers, it shows this just march of unreasonableness that I would argue began in 1976. Why doesn't it show the exact contrary? Because when there have been changes, there have been changes to pare back what they've done. I mean, they've created exceptions relative to bumper stickers or carved out an area relative to bumper stickers. They went from 300 foot to 100 feet. Why? I mean, it seems to show the exact contrary. There's no expansion. And let me put it more simply. To the extent that they've made changes, they haven't expanded the scope of regulatory restriction. They've restricted it. Have they not? Judge Holmes, it goes both ways. I mean, the additions of exit polling in the 1980s, which was struck down in a settlement a few years later, the addition of signature gathering in the 1980s. So it ebbs and flows, to be sure. And, again, never with an evidentiary record. What we've put in the record shows only Justice Stevens is concerned in his dissent, that this law is used for nothing more than political bushwhacking. The 100-yard zone, for example, we have a complaint in there that, oh, my political opponent lives across the street from a polling place and had a yard signed for himself. That's not intimidation or confusion. That's just political bushwhacking. Well, let's talk about the notion of bumper stickers. One bumper sticker, maybe, 50, 100 bumper stickers, driving around with statements on them. Why isn't that electioneering? Parking in front of the polling place, why isn't that electioneering? Judge Holmes, I think within a proper 100-foot zone, that's regulable, certainly. 100 yards or 100 feet, again, we've shown Mr. Frank, in particular, misdemeanor to drive by the courthouse if he has two bumper stickers on his car for the same candidate. All right, that is manifest unreasonableness. And that chill goes far beyond. He's not going to buy a magnetic bumper sticker that he can remove every time he drives downtown. So I think that's the. So I found one thing about the bumper sticker part of this a little confusing. It says that there wouldn't be a restriction except provided that. And one of the provided that's is the vehicle is parked within the distance specified in the subsection only during the time the elector is voting. Does that mean the bumper sticker exception only applies to voters? No, Your Honor, that would only apply if they're coming to vote in park. If you see before the Roman numerals in the law, this section shall not apply to bumper stickers affixed to a vehicle while parked within or passing through the distance specified in this subsection. So if they park, yeah, they need to be a voter. Well, it also, in the three subsections, is listed in the conjunctive. It says and. So isn't there some tension there? No, Your Honor, I don't think so. I think part three is the only thing that triggers if you're going to park, then you'd better be a voter. Otherwise, passing through is prohibited if you have more than one bumper sticker per candidate for an individual candidate or if the bumper sticker is bigger than four by six. Well, OK, let me just back up. And this is sort of a part of the theme that Holmes was developing. So if you've got the hundred foot or the hundred yard buffer and the legislature says, well, we've got these buffers, but we're going to relax the buffer for bumper stickers, at least in the way they've done here, isn't the legislature allowing more speech, not less, by putting in the bumper sticker exception? Judge Matheson, it should be applauded that they're heading in the direction of more free speech, but they haven't gone nearly far enough. It doesn't change the analysis this Court needs to make. Well, but you're challenging the bumper sticker exception as a separate claim. Yes, Your Honor. And the bumper sticker exception is a speech enhancing part of the statute, not a speech limiting part of the statute. So where's the First Amendment violation? Your Honor, the record amply shows it's a First Amendment violation against Mr. Frank, who wants to represent foot more than one bumper sticker. But that's your argument about the buffer itself. The buffer covers the bumper stickers unless there's the exception. Yes, Your Honor. I'm sorry, I don't quite follow. Well, I don't know why you don't follow. We've got a hundred foot buffer that would cover everything within the hundred feet, including bumper stickers, unless you add the bumper sticker exception. Yes, Your Honor. And Burson footnote 14 would have carved that out for an as-applied challenge. All right. Time has expired. Your time is up. Let me try one more time here. Absent the bumper sticker exception, you can have any bumper stickers, right? Correct, Your Honor. Okay, but you're still challenging the fact that they've carved out this little thing to allow you to have bumper stickers. We're carving out that they're putting their own unreasonable borders on how many bumper stickers you can have, the size of those bumper stickers. Oh, okay. So the point is, if you're going to make this exception, you should make it a reasonable one. Correct, Your Honor. Thank you. I have a light of clarity. I appreciate it. Thank you. Thank you. All right. Did you have any time? We'll give you one minute. Don't have to take it if you don't want it. Very briefly, Your Honors. I just want to go back to 100 feet considered in Burson. That was simply the statute and simply the distance that was considered. There's no magic in 100. It's not a bright-line rule. Here, on absentee days, we have the exact same distance. On election days, we have a very slightly larger limitation. And as the plurality said, whether the line can be somewhat tighter is not a question of constitutional dimension. And that's exactly what we have here is a difference between 100 feet, 100 yards. That's not a question of constitutional dimension. The statute reasonably restricts and is minimally intrusive on speech solely to further the governmental interest. And very briefly, before my time is up, signature gathering presents the exact same type of harms as other forms of electioneering related to issues on the ballot. And there's evidence in the record to support that, the citation of Ms. Jennifer Horrell. And my time is up. Thank you. Thank you, counsel, for your very fine arguments. Case is submitted.